UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FORDELMA JEAN LOFTON,<br>    *Plaintiff*,<br>    *v.*<br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br>    *Defendant*. | Civil No. 3:13cv528 (JBA)<br><br>May 13, 2015 |

**RULING ON DEFENDANT'S OBJECTION TO THE RECOMMENDED RULING**

Plaintiff Fordelma Jean Lofton commenced this action under Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), as amended. She seeks review of the final decision of Defendant, the Commissioner of Social Security, denying her Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI") benefits from January 1, 2001 through September 30, 2003. On October 24, 2014, Magistrate Judge Margolis issued a 48-page Recommended Ruling [Doc. # 24] denying Plaintiff's Motion [Doc. # 17] to Reverse the Decision of the Commissioner and granting Defendant's Motion [Doc. # 19] to Affirm the Commissioner's Decision. Plaintiff has filed a timely objection [Doc. # 29] to the Magistrate Judge's Recommended Ruling, requesting that the Court reject Judge Margolis's analysis and remand the matter for further consideration and testimony relative to her carpal tunnel syndrome. For the reasons that follow, Plaintiff's objection is overruled and the Recommended Ruling is approved and adopted in full.

**I.    Background**

The factual and procedural background of this action is presented on pages one through seventeen of the Recommended Ruling, which this Court incorporates by reference. Briefly, on July 2, 2001, Plaintiff applied for DIB and SSI benefits, claiming she

was disabled due to osteoarthritis in her knees, carpal tunnel syndrome in her wrists, hypertension, diabetes, and depression. (Certified Transcript of Administrative Proceedings, dated July 24, 2013 ("Tr.") at 73, 111–13; *see id.* at 70–73, 122, 406.) Ms. Lofton is a 61-year old woman with a high school education and vocational training. (*Id.* at 44, 341–42.) Prior to the onset of her claimed disabilities, Plaintiff was an electronics assembler for Trans-Lux from 1996–1999. (*Id.* at 45, 343–44.) On June 23, 1997, Plaintiff suffered a knee injury when she tripped and fell. (*Id.* at 349–58.) After taking considerable time off from work due to her injury, she was terminated from her position. (*Id.* at 341–44.) Thereafter, Plaintiff worked as a data entry clerk and a bread feeder for Pepperidge Farms, but stopped working in 2001 due to her ailments. (*See id.* at 44–45, 59.)

After submitting her application for disability benefits in July 2001, Plaintiff's request was twice denied, and she requested a hearing in front of an Administrative Law Judge ("ALJ"). (*See id.* at 70–87.) That hearing took place on December 12, 2003, before ALJ Ronald Thomas. (*Id.* at 406.) Plaintiff was represented by counsel at the hearing and continues to be represented throughout this action. (*See id.* at 39, 88–89, 422–23.) On July 30, 2004, ALJ Thomas found that Ms. Lofton was not disabled between 2001 and 2003, but that as of October 10, 2003, she met the definition of "disabled" under 20 CFR §§ 404.1520(g) and 416.920(g). (*Id.* at 406–11.)

On appeal, the Appeals Council affirmed in part, finding that Plaintiff was "disabled" as of October 10, 2003, but remanded the case for further evaluation of Plaintiff's impairments between the years of 2001 and 2003. (*Id.* at 412–16.) ALJ Thomas held a second hearing on June 1, 2007, during which, at the direction of the Appeals Council, he heard testimony from Vocational Expert ("VE") Ken Smith. (*See id.* at 58–

2

69.) However, in his second decision, ALJ Thomas once again held that Ms. Lofton did not qualify for DIB or SSI benefits prior to October 10, 2003. (*Id.* at 25–35.) That decision was then adopted by the Commissioner. (*Id.* at 2–6.)

## II. Standard of Review

### A. Standard of Review of a Magistrate Judge's Recommended Ruling

The Court reviews *de novo* those portions of the Recommended Ruling to which an objection is made, and may adopt, reject, or modify, in whole or in part, the Recommended Ruling. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

### B. Standard of Review of a Social Security Disability Determination

This Court will "set aside the ALJ's decision only where it is based upon legal error or is not supported by substantial evidence." *Balsamo v. Chater,* 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence 'is more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The substantial evidence standard also applies to inferences and conclusions that are drawn from findings of fact. *See Gonzalez v. Apfel,* 23 F. Supp. 2d 179, 189 (D. Conn. 1998).

The Social Security Act provides that every individual who suffers from a "disability" is entitled to disability insurance benefits. *See* 42 U.S.C. § 423(a)(1). "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A).

In reviewing disability claims, the agency must follow a five-step process. First, the agency will determine whether a claimant is engaged in substantial gainful activity and second, whether the claimant has an impairment which is of the required duration and which significantly limits her ability to work. If the claimant is engaged in substantial gainful activity or does not have a sufficiently severe impairment, the claim will be denied. *See* 20 C.F.R. § 404.1520(a)–(c). Third, the medical evidence of the claimant's impairment is compared with a list of impairments presumed severe enough to preclude any gainful work, and if the claimant's impairment matches or "equals" one of the listed impairments, she qualifies for benefits without further inquiry. *See* 20 C.F.R. § 404.1520(d).

In considering which medical evidence to rely on, an ALJ must treat "the opinion of a treating physician on the nature or severity of a claimant's impairments [a]s binding if it is supported by the medical evidence and not contradicted by substantial evidence in the record." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)); *see* 20 C.F.R. § 404.1527(c)(2) ("If [an ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight."). If an ALJ decides not to give the treating physician's opinion controlling weight, the ALJ will consider the following factors in assigning a lesser weight to the opinion:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors

4

> brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

If the claimant does not qualify under the listed impairments at step three, the agency must take the fourth step of determining whether the claimant can perform her own past work, *see* 20 C.F.R. § 404.1520(e)–(f), and if not, take the fifth step of assessing the claimant's present job qualifications, and whether jobs exist in the national economy that claimant could perform, *see* 20 C.F.R. § 404.1520(g); *see also generally Heckler v. Campbell,* 461 U.S. 458, 460–61 (1983).  The burden of establishing a disability is on the claimant, and once the claimant demonstrates that she is incapable of performing her past work, the burden shifts to the agency to show that the claimant is capable of pursuing alternative work.  *See Balsamo,* 142 F.3d at 80.

III. **Discussion**

In denying Ms. Lofton's application for DIB and SSI benefits for the period prior to October 10, 2003, ALJ Thomas found that Ms. Lofton's carpal tunnel syndrome was a mild, not severe, impairment for purposes of DIB and SSI.  (Tr. 25–35, 406–11.) Magistrate Judge Margolis upheld that determination, finding that ALJ Thomas had adequately addressed Ms. Lofton's carpal tunnel syndrome and that his conclusion that it was not severe was supported by the evidence.  (*See* Rec. Ruling [Doc. # 24] at 23–35.)

Plaintiff objects to Magistrate Judge Margolis's Recommended Ruling on two grounds.  First, she argues that Magistrate Judge Margolis erred in upholding ALJ Thomas's determination that her carpal tunnel syndrome was not a severe impairment.  (Pl.'s Mem. Supp. [Doc. # 29-1] Objection at 1.)  Second, she contends that Magistrate Judge Margolis erred in finding that the ALJ adequately considered Plaintiff's carpal

tunnel syndrome when forming the RFC ultimately used to evaluate Plaintiff's available occupational base. (*Id.* at 2.)

In support of both of these objections, Plaintiff argues that she underwent surgery for her carpal tunnel syndrome in February 2012. (Tr. 16–18; *see also* Pl.'s Mem. Supp. at 1–2.) Therefore, Plaintiff concludes, her carpal tunnel must have been a severe impairment "as no competent physician would perform surgery where no surgery is necessary." (*Id.* at 1.) Plaintiff's objection offers no additional explanation of why surgery in 2012 supports a claim of disability in 2001. By Plaintiff's own admission, her surgery was performed five years after the ALJ's decision. (*Id.* at 1–2; Tr. 16–18; *see also* Tr. 25–35, 406–11.) Although Magistrate Judge Margolis issued her decision in October 2014, her review, like this Court's, was limited to determining whether the ALJ's decision was supported by substantial evidence. Evidence not before the ALJ cannot be considered.

In her Recommended Ruling, Magistrate Judge Margolis correctly found that ALJ Thomas specifically addressed Plaintiff's carpal tunnel syndrome, and did not err in characterizing it as non–severe during his five–step analysis under the Social Security Act. (Rec. Ruling at 19–43.) In support of this finding, Magistrate Judge Margolis noted that ALJ Thomas discussed Plaintiff's carpal tunnel in three different portions of his 2004 decision, considered the medical findings related to Ms. Lofton's carpal tunnel condition when forming Plaintiff's RFC, and concluded that it was a "medically determinable impairment that was not severe." (*Id.* at 23 (citing Tr. 406–09).) For the reasons that follow, the Court adopts the Recommended Ruling and concludes that the ALJ's findings are substantially supported by the administrative record.

The administrative record reveals that between the years of 2001 and 2003, Plaintiff was seen by multiple physicians for a number of ailments, including complaints about numbness and pain in her hands. (*See* Tr. 47, 52.) As early as May 23, 2000, Plaintiff showed signs of early osteoarthritis. (*Id.* at 217.) In 2007, Plaintiff testified that the pain in her hands was so severe that, from 2001 to 2003, she had difficulty picking things up without dropping them. (*Id.* 52–53.) However, physician reports from May 2000 to November 2002 indicate that Plaintiff's complaints about her wrist pain could not be objectively verified by medical testing. (*See* Tr. at 177–78, 261, 298, 310.)[1]

For example, on June 29, 2001, Plaintiff completed a self–assessment form stating that the pain in her wrist limited her ability to work. (*Id.* at 122.) However, another assessment completed on June 14, 2001 by Dr. McReynolds, Ms. Lofton's treating physician, concluded that Plaintiff was limited in her capacity to work primarily because of her high blood pressure, knee pain, and Type II Diabetes; not by wrist pain. (*Id.* at 258–59.) Although Dr. McReynolds did mention Plaintiff's hands, it was only in relation to the "additional environmental restrictions" section of the report, in which he opined that working around vibrations would "affect [the] sensation in [Plaintiff's] hands." (*Id.* at 259.) On July 19, 2001, Dr. McReynolds reexamined Ms. Lofton and found that both of her hands had "good range of motion." (*Id.* at 211.) Later that same year, Plaintiff was seen by Dr. Rakesh Anand for DDS. (*Id.* at 178.) Dr. Anand's report, dated September 7, 2001, revealed that Plaintiff had normal grip strength in both upper extremities, and that she had normal bilateral range of motion in her wrists. (*Id.*)

---

[1] These reports came from various physicians; some worked for Connecticut's Disability Determination Services ("DDS") and some were Plaintiff's treating physicians.

Although a November 20, 2001 Electromyography (EMG) report revealed "evidence of a mild, right median nerve demyelinating neuropathy across the wrist/i.e. carpal tunnel syndrome" (*id.* at 261)[2], and by December 20, 2001, Plaintiff had been prescribed Neurontin for "chronic pain" (*id.* at 286)[3], scans conducted in January 2002 revealed no evidence of carpal tunnel syndrome (*id.* at 298).

Because the medical testing was inconclusive and the nerve conduction study revealed only one wrist was affected by carpal tunnel, this Court finds, as did Magistrate Judge Margolis, that ALJ Thomas's determination that Plaintiff's carpal tunnel syndrome was not a severe impairment as defined by the Social Security Act is supported by substantial evidence.

Plaintiff's argument regarding the completeness of the VE's testimony is also without demonstrated merit.  Plaintiff contends that "[i]f the ALJ included limitations caused by the carpal tunnel syndrome in the RFC description, then the Vocational Expert (VE) could have testified to jobs that Ms. Lofton could perform with her actual limitations."  (Pl.'s Mem. Supp. at 2.)  However, as Judge Margolis observed in her Recommended Ruling, both ALJ Thomas and Plaintiff questioned the VE on the number of employment opportunities available for someone with Plaintiff's existing limitations as well as carpal tunnel syndrome.  (*See* Rec. Ruling at 27, 39; *see also* Tr. at 62–69.)  During the 2007 administrative hearing, VE Ken Smith was asked a series of questions regarding

---

[2] As Magistrate Judge Margolis noted, however, this diagnosis was only for Plaintiff's right wrist, and "there was no mention of any impairments in the left wrist." (*See* Rec. Ruling at 27.)

[3] Neurontin is a prescribed to alleviate neuropathic pain from tissue or nerve damage.  These notes, however, do not specify whether her wrist pain or knee pain was the reason for this prescription.

Plaintiff's available occupational base given her functional limitations. (Tr. 58–69.) In response to a hypothetical question about the occupational positions available to a person with Plaintiff's preexisting limitations who also had carpal tunnel syndrome, the VE testified that "it really would narrow the occupational base significantly" and that person would only be eligible for work as a surveillance system monitor, of which there are only 100 positions in Connecticut. (*Id.* at 66–68.) In his 2007 decision, ALJ Thomas acknowledged that if Plaintiff suffered from carpal tunnel syndrome, the VE's testimony showed there would be few, if any, jobs she could perform. (*Id.* at 34.) But, the ALJ was not persuaded by this testimony because, as noted above, objective medical evidence undermined Plaintiff's complaints of carpal tunnel syndrome. (*Id.* at 33–34.) As a result, the ALJ set that testimony aside when determining Plaintiff's RFC, and reasoned that "the restrictions to sedentary levels of work adequately safeguard[ed] the claimant from strenuous physical activity that might exacerbate her symptoms." (*Id.*)

Thus, notwithstanding Plaintiff's argument to the contrary, the ALJ *did* address her carpal tunnel syndrome when forming her RFC, and furthermore, he *did* obtain testimony from a vocational expert regarding Plaintiff's job prospects if she was further limited by carpal tunnel syndrome, and therefore, the VE's testimony was not incomplete.

## IV.     Conclusion

For the foregoing reasons, Plaintiff's objection [Doc. # 29] is OVERRULED and the Recommended Ruling [Doc. # 24] is APPROVED and ADOPTED in full. Plaintiff's Motion [Doc. # 17] to Reverse the Decision of the Commissioner is DENIED. Defendant's Motion [Doc. # 19] to Affirm the Decision of the Commissioner is GRANTED. The Clerk is directed to close this case.

IT IS SO ORDERED.

/s/_
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of May, 2015 .